# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **GREGORY D. MORRELL,** | ) | Civil Action No. 1:07cv00003 |
| Plaintiff, | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **THE BARTER FOUNDATION, INC.,** | ) | By: PAMELA MEADE SARGENT |
| Defendant. | ) | United States Magistrate Judge |

The plaintiff, Gregory D. Morrell, brought this action against the defendant, The Barter Foundation, Inc., ("the Barter"), for alleged violations of Title III of the Americans With Disabilities Act, ("ADA"), 42 U.S.C.A. §§ 12181-12189 (West 2005).[1] This matter is currently before the court on the Barter's Motion To Stay, (Docket Item No. 11), filed on February 26, 2007, the Barter's Motion To Dismiss the case as being moot, (Docket Item No. 22), filed on March 26, 2007, Morrell's Response In Opposition To Defendant's Motion For Stay, (Docket Item No. 16), filed on March 7, 2007, Morrell's Objection, Response And Memorandum In Opposition To Motion To Dismiss, (Docket Item No. 35), filed on April 23, 2007, and on the Barter's Reply In Support Of Its Motion To Dismiss, (Docket Item No. 36), filed on May 1, 2007. This court has federal question jurisdiction over this matter pursuant

---

[1] 42 U.S.C.A. § 12182(a) (West 2005), provides as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." The ADA grants a private right of action for injunctive relief to any person who is being subjected to discrimination on the basis of disability. *See* 42 U.S.C.A. § 12188(a)(1) (West 2005) (referencing 42 U.S.C. § 2000a-3(a)).

Case 1:07-cv-00003-GMW-PMS   Document 40   Filed 05/11/07   Page 1 of 21   Pageid#: 299

to 28 U.S.C. § 1331. The Motion to Stay and the Motion to Dismiss are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## II. Factual Background

The Barter operates a public accommodation known as The Barter Green, also known as Stonewall Square, consisting of the Barter II Theatre and the Barter Café. The Barter Green Project, ("the Project"), completed in May 2006, included the completion of the Barter Café and the grading and paving of a parking lot to serve the public while attending the Barter Theatre,[2] the Barter II Theatre and the Barter Café. The Project borders on at least two public streets, Main Street and Partington Place. Morrell, who has a physical disability that substantially limits one or more of his major life activities, as required under 42 U.S.C. § 12102(2), alleges that in the development of the Project, The Barter failed to remove barriers that existed between its property and the public sidewalk, by failing to make altered facilities readily accessible and by failing to design and construct facilities for first occupancy after January 26, 1993,[3] in violation of the ADA. Morrell further alleges that the Barter installed tables to serve the public outside of the Barter Café that were not wheelchair accessible. In his Response, (Docket Item No. 7), to the Barter's Motion For More Definite Statement, (Docket Item No. 5), Morrell more specifically alleged the

---

[2]The Barter Theater is located across Main Street from the Barter Green.

[3]Pursuant to 42 U.S.C. § 12183(a)(1), facilities designed and constructed for first occupancy after January 26, 1993, must meet ADA requirements.

Case 1:07-cv-00003-GMW-PMS   Document 40   Filed 05/11/07   Page 2 of 21   Pageid#: 300

following violations of the ADA:

  1.  The Barter has failed to provide an appropriate accessible path of travel between the public sidewalk and the Barter Green buildings;

  2.  The Barter has failed to provide an accessible path of travel from that portion of the Project that begins at the base of the stairs near Main Street to the remainder of the Project;

  3.  The patio tables that are being used by the Barter Café do not have sufficient clearance for customers who are in wheelchairs;

  4.  The Barter is using picnic tables that allow no access at all for customers who are in wheelchairs;

  5.  Although accessible parking has been constructed, there is not an accessible access aisle for the van accessible space;

  6.  The entrance to the Barter Café patio has a door threshold that is too high;

  7.  The handrails do not meet the minimum ADA height requirements;

  8.  The stair nosings may be a barrier because of the protrusion beyond the stairs;

  9.  There is a rock sidewalk at the top of the stairs connecting to the Barter Café that does not have a firm slip resistant surface; and

  10.  The brick sidewalk at the top of the sidewalk leading to the parking lot on the Barter Green has a level area at the end of the sidewalk, but it is on the side. There is an abrupt lip at the end of the sidewalk that could be very hazardous.

Due to Morrell's disability, he alleges that he is unable to walk on his own and he has been unable to access the Project property. Morrell alleges that his lack of access to the Project property includes not only from public rights of way on either

-3-

Main Street or Partington Place, but that he also is being prevented while on the Project site from accessing other parts of the Project site and from leaving the Project site due to barriers to accessibility that have not been removed.

In its Motion to Dismiss, the Barter contends that it has received funding from the Virginia Department of Transportation, ("VDOT"), to build an accessible sidewalk from Stonewall Square along Partington Place to Main Street. The Barter contends that Morrell's remaining claims of ADA violations either have been or will be remedied or never existed at all. That being the case, the Barter argues that Morrell's claims are now or will soon become moot, thereby requiring dismissal of the case. In the alternative, the Barter seeks a stay of Morrell's claims pending the completion of construction of the sidewalk.

### III. Analysis

A.      *Motion to Dismiss / Motion for Summary Judgment*

It is clear that mootness is a jurisdictional issue. *See Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir. 1989). Since Article III of the United States Constitution limits the jurisdiction of the federal courts to "actual, ongoing controversies," *Pressley Ridge Schools v. Shimer*, 134 F.3d 1218, 1220 (4th Cir. 1998) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)), if a claim becomes moot, the court no longer has jurisdiction to decide the claim. *See also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 457 (4th Cir. 2005) (holding that the doctrine of mootness flows from the constitutional limitation of federal court jurisdiction to

-4-

actual cases or controversies).

A federal court must dismiss a case whenever it appears that the court lacks subject matter jurisdiction. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); FED. R. CIV. P. 12(h)(3). The absence of jurisdiction may be raised at any time during a case, and may be based on the court's review of the evidence. *See Lovern*, 190 F.3d at 654 (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)). A district court may address its lack of subject matter jurisdiction in two ways. *See Lovern*, 190 F.3d at 654 (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff or, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations. *See Lovern*, 190 F.3d at 654 (citing *Adams*, 697 F.2d at 1219). If the jurisdictional facts are intertwined with the merits of the dispute, ordinarily the entire dispute is appropriately resolved by a proceeding on the merits. *See Lovern*, 190 F.3d at 654.

I first note that the court must construe the Barter's Motion to Dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(c). Under that section, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. ..." FED. R. CIV. P. 12(C). Because matters outside the pleadings have been presented to and considered by the court, the court must consider the Barter's Motion to Dismiss as a motion for summary judgment.

Case 1:07-cv-00003-GMW-PMS   Document 40   Filed 05/11/07   Page 5 of 21   Pageid#: 303

The standard of review for a motion for summary judgment is well-settled.  A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); s*ee Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the party opposing the motion.  *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986);  *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1090 n.7 (4th Cir. 1980).  The plaintiff is entitled to have the credibility of all his evidence presumed.  *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990).  The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.  *See Anderson*, 477 U.S. at 248.  A mere scintilla of evidence supporting the case is insufficient. *See Anderson*, 477 U.S. at 248.

-6-

*1.      Handicapped Accessible Sidewalk*

I first will address Morrell's claim that the Barter has no accessible path of travel from a public street to the Barter Green. Because the only available remedy under the ADA is injunctive relief, the issue before the court is whether Morrell's claim is moot given the funding for the construction of an ADA-compliant sidewalk from Main Street to the Barter Green. For the reasons that follow, I find that granting the Barter's motion for summary judgment on mootness grounds is inappropriate at this time.

It is well-settled that a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *See Leonard v. Hammond*, 804 F.2d 838, 842 (4th Cir. 1986); *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Therefore, when a defendant remedies an alleged violation of the ADA and the allegedly wrongful behavior could not reasonably be expected to recur, the plaintiff's case becomes moot and must be dismissed. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 609 (2001) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The Barter alleges that mere plans to correct an alleged ADA violation will moot an ADA case if the plans are sufficiently definite. To support this proposition, the Barter relies on *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365 (S.D. Fla. 2006). I first note that, while this case may provide guidance to this court in making its determination, it is not binding on the court. In any event I find that The Barter's reliance on *Access 4 All* is misplaced because the case at bar is distinguishable.

-7-

In *Access 4 All,* the court held that if a plaintiff in an ADA case already has received everything to which he would be entitled, then those claims are moot absent any basis for concluding that the plaintiff will be subjected again to the same wrongful conduct by the defendant. *See* 458 F. Supp. 2d at 1365 (citing *Parr v. L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Haw. 2000)). In *Access 4 All*, an advocacy group and a disabled individual claimed that the defendant, a resort facility, violated the ADA in numerous ways. The court found that plaintiffs' claims were moot because "[d]efendant's plans for ADA compliant renovations were already in effect prior to [p]laintiffs' filing their lawsuit, thus making it absolutely certain that any future ADA violations at the Casa Marina Resort could not be reasonably expected to occur." 458 F. Supp. 2d at 1365. Despite the fact that the defendant had only plans to renovate, just as in the case at bar, I find that the two cases are distinguishable for the following reasons.

In *Access 4 All*, there was a *comprehensive plan* in place to remodel the entire facility and bring it into compliance with the ADA. The court noted that the new owner of the resort had invested approximately $38 million to renovate the facility and bring it into compliance with the ADA. *See* 458 F. Supp. 2d at 1365. Specifically, on or about January 1, 2006, prior to the filing of the lawsuit, the defendant entered into a contract with an architectural firm for services regarding the renovations of the resort. *See Access 4 All*, 458 F. Supp. 2d at 1363. The architectural firm developed a quote for architectural plans, prepared the plans for renovations and modifications, submitted the plans to the city planning board and attended numerous meetings with the city planning board and its various building boards/departments, including a meeting on July 27, 2006, for final approval of the plans. *See Access 4 All,* 458 F.

-8-

Supp. 2d at 1363-64. The architectural firm certified that the plans were in compliance with applicable laws as required by the city planning board guidelines in preparation of the plans for renovations and modifications to the resort. *See Access 4 All*, 458 F. Supp. 2d at 1364.

In submitting plans for approval by the city planning board, the architectural firm was required to comply with all ADA requirements for public lodging facilities. *See Access 4 All*, 458 F. Supp. 2d at 1364. The firm was required by the city to supply the appropriate construction drawing reflecting ADA compliance at the time of building permit submittal. *See Access 4 All*, 458 F. Supp. 2d at 1364. Finally, in submitting plans for the city planning board's approval, the architectural firm was required to assist in obtaining all necessary permits and licenses, including building permits, which were required by federal, state, county and city agencies. *See Access 4 All*, 458 F. Supp. 2d at 1364. In an effort to confirm that the proposed renovations and architectural plans developed since the purchase of the resort complied with the ADA, the firm examined the specific barriers alleged in the complaint. *See Access 4 All*, 458 F. Supp. 2d at 1364. Furthermore, and again in an effort to confirm the accuracy of the proposed renovations and architectural plans, the firm also consulted with an expert in Title III ADA matters. *See Access 4 All*, 458 F. Supp. 2d at 1364. Likewise, this expert confirmed that the architectural planning documents that the firm prepared and submitted to the city planning board addressed the remedy needed for those additional barriers that the expert encountered during a property inspection of the resort on July 6, 2006. *See Access 4 All*, 458 F. Supp. 2d at 1364. The renovation and construction of the resort is scheduled to be completed by early 2008. *See Access 4 All*, 458 F. Supp. 2d at 1364.

-9-

Thus, it appears that in *Access 4 All*, the funding for the renovations, approximately $38 million, already had been invested by the owner of the resort and that, while still in the planning phase, numerous steps had been completed in that planning phase. By contrast, here, while the funding has been approved by VDOT, the Barter admits that the funding could be lost if the Barter proceeds with construction before the appropriate authorization from VDOT is obtained at each phase of the Project. The Project is being administered by the Town of Abingdon, ("the Town"), and the Town and VDOT signed a contract for the work on February 13, 2007, ("the Agreement"). (Docket Item No. 23, Exhibit 2.) According to the Agreement, $115,000 is being allocated by VDOT for "[c]onstruction of a retaining wall, sidewalks, and historic street lighting on Partington Place and Main Street, in the vicinity of the Barter Theater in Abingdon."[4] The Barter contends that the planning and engineering are underway and, barring unforeseen difficulties, the work should be completed later this year. In any event, the Barter contends that, in order to eliminate any contingencies regarding construction, the Board of Trustees of the Barter has committed to construct the sidewalk, or some other accessible path, with its own funds if, for any reason, the VDOT grant should fail. (Docket Item No. 23, Exhibit 1, Second Declaration of Richard Rose, ("Rose Declaration"), at 1.) Nonetheless, the Barter admits that this funding is not currently in place, nor does it elaborate on the source of such funding or when it would be appropriated. (Exhibit A to Rose Declaration, Construction And Funding Commitment Of The Barter

---

[4]While the Agreement does not specify that any of the sidewalks to be constructed with the VDOT grant funds will be handicapped accessible, William Garrett Jackson, the Director of Planning for the Town of Abingdon, stated in his Declaration that he was familiar with the Project, and that it included the construction of such an accessible sidewalk from Stonewall Square along Partington Place to Main Street. (Docket Item No. 23, Exhibit 2, Declaration of William Garrett Jackson, ("Jackson Declaration"), at 1.)

-10-

Foundation, Incorporated.)

The Project is part of VDOT's Transportation Enhancement Program, ("the Program"), described in VDOT's Enhancement Procedural Manual (March 2005), ("the Manual"), a copy of which is attached to the Barter's motion for summary judgment. Projects authorized under the Program are required to follow very specific procedures. Funding approval is merely the first step in a very rigorous process. According to the Manual, once an agreement is signed and returned, the sponsor, here, the Town, will be notified in writing that it is acceptable to proceed with preliminary engineering, ("PE"), activities. Next, is the right-of-way phase and, finally, the construction phase. According to the Manual, following receipt of authorization and a coordination meeting with VDOT, work may begin on design and environmental documents. In doing so, a common first step is to contract for professional services. In contracting for professional services, the Town must submit a request for proposals for professional services to the Enhancement Project Manager for review prior to advertisement. Following VDOT approval, the Town must advertise, perform interviews and select a consultant. Prior to contracting for professional services, the Town must submit a draft of the professional services contract to the Enhancement Project Manager for a pre-award audit and review. Only after all of these steps have been completed may the Town award a professional services contract. Once professional services have been contracted for, the project plans must be developed and an environmental document must be generated. Both of these undertakings include various steps as well.

Here, the Barter has submitted evidence that it has received authorization from

VDOT to proceed with the PE phase. It also, apparently, has contracted for professional services with the architectural firm of Cash Rain West. Morrell alleged during the hearing on the Motion to Stay on March 9, 2007, that Cash Rain West only has completed some "sketches" of the Project thus far. Furthermore, in his Response to the Motion to Dismiss, Morrell contends that the Barter, in its amended response to his motion for the production of documents, received on April 20, 2007, produced additional sketches that the Barter itself described only as "50% drawings" that it contended had been sent the week of April 23, 2007, to VDOT for review. The Barter admits in its Reply that the architect has completed construction drawings for the sidewalk "50%," and that once the 50% completed drawings are approved by VDOT, the architect will finish the drawings and submit the Project for bids. The Barter does not estimate how long this process might take. It only continues to allege that the entire Project *should* be completed by the end of the year. Thus, as Morrell contends, the Barter has not garnered approval of any plans, either from VDOT or the Town, for the next steps of the PE phase to begin.

As requested by this court, the Barter now has informed Morrell that it is not required to obtain any further approval from the Architectural Review Board, ("ARB"), before the Project can get underway. However, as Morrell notes in his Response to the Motion to Dismiss, this is in direct contradiction to the statement made by Richard Rose, the Producing Artistic Director of the Barter, in a letter of May 8, 2006, in which he stated that the "Barter will submit to Abingdon's Board of Architectural Review new plans reflecting the change in the handicap accessible sidewalk once VDOT allows us to move forward." In any event, whether the Barter must receive approval from the ARB makes no difference to this court's analysis at

-12-

this point since the Barter has not even received approval from VDOT at this time.

In his Declaration dated April 23, 2007, Morrell states that he spoke with Erica Miller at the Abingdon, Virginia, VDOT office. (Docket Item No. 35, Exhibit 1, Declaration of Gregory Morrell, ("Morrell Declaration"), at 1.) Miller, who stated that she was familiar with the Project, informed Morrell that the Project had just begun with a kickoff meeting the week of March 5, 2007. (Morrell Declaration at 1.) She estimated that if everything went "relatively smoothly," the Project *could* be finished in eight or nine months. (Morrell Declaration at 1) (emphasis added).

Lastly with regard to the motion for summary judgment, to the extent that the Barter relies on any voluntary cessation argument, it must fail. It is well-settled that the voluntary cessation of allegedly illegal conduct makes a case moot where: (1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur ... and (2) interim relief or events have completely eradicated the effects of the alleged violation. *Jones v. Poindexter*, 903 F.2d 1006,1009 (4th Cir. 1990) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Here, it does not appear from the evidence submitted by the Barter that the allegedly illegal conduct, which includes its failure to provide an accessible path of travel from the Barter Green to the public sidewalk, has been voluntarily ceased. Instead, The Barter asserts that it has only *plans* to voluntarily cease this allegedly illegal conduct. Because the Barter has only plans to cease this alleged violation of the ADA, and given the rigorous procedures that must be followed under the Program, and which failure to follow could result in losing the VDOT grant, it certainly cannot

-13-

be said that there is no reasonable expectation that the alleged violation will recur, for the violation will certainly continue to occur until the completion of construction of an ADA-compliant sidewalk.

For all of the foregoing reasons, I find the Barter's plans pursuant to the VDOT grant, which would include construction of a handicapped accessible sidewalk, are not sufficiently definite, at this time, to justify this court granting the motion for summary judgment on mootness grounds. Simply put, viewing the facts, and the reasonable inferences to be drawn therefrom, in favor of the plaintiff, genuine issues as to material facts exist, and a live controversy still exists in this case, making the granting of the motion for summary judgment on mootness grounds inappropriate at this time.

### 2. Other Alleged ADA Violations

As outlined above, Morrell claims that there exist other ADA violations that the Barter has failed to correct. The Barter, in its Reply, contends that all of these alleged violations have either been remedied, will be remedied in the near future or never existed. For instance, the Barter claims that it made modifications to the parking area to satisfy Morrell's complaints before Morrell's complaint was even filed. Next, the Barter contends that while the picnic tables of which Morrell complains might not meet ADA requirements, the Barter has a sufficient number of ADA-compliant tables. In any event, the Barter claims that new picnic tables are being built which will comply with the ADA, and which should be completed within approximately two months. With regard to Morrell's claim that patio tables at the Barter Café do not meet the minimum ADA height requirement and knee clearance requirements, the Barter

-14-

reiterates its argument that it already has a sufficient number of ADA-compliant tables. Next, with regard to Morrell's contentions that the threshold to the entrance of the Barter Café is too high according to ADA requirements, the Barter contends that the ADA does not require that every entrance be in compliance with ADA standards and that there already exists an accessible entrance for disabled patrons. Nonetheless, the Barter asserts that it has built a second handicapped accessible entrance to the Barter Café. (Rose Declaration at 2.) Next, in response to Morrell's contention that the handrails do not meet the minimum ADA height requirements, the Barter states that this simply is incorrect and that Morrell has offered no evidence to the contrary. Moreover, in response to Morrell's claim that the stair nosings may be a barrier because they protrude beyond the stairs, the Barter asserts that the nosings meet all ADA standards and, in any event, Morrell lacks legal standing to bring such a claim because he does not use the stairs. In response to Morrell's contention that the rock sidewalk located at the top of the stairs which connects to the Barter Café does not have a firm slip-resistant surface, the Barter claims that there also exists an accessible sidewalk to the Barter Café and, in any event, it plans to resurface the rock sidewalk with smooth bricks. (Rose Declaration at 2-3.) Finally, Morrell claims that the brick sidewalk leading to the parking area has a level area at the end of the sidewalk, but that it is on the side of the parking area. Morrell further contends that there is an "abrupt lip" at the end of the sidewalk that could be very hazardous. The Barter asserts that the sidewalk is ADA-compliant and, nonetheless, an entirely new accessible sidewalk will be built with the VDOT grant.

As is clear from the parties' allegations, there are genuine issues of material fact in dispute, and the jurisdictional facts are so intertwined with the merits of this case,

-15-

that the court simply is not comfortable disposing of these issues on a motion for summary judgment. *See Lovern,* 190 F.3d at 654. Instead, this court deems it necessary that in order to appropriately resolve the parties' claims, it must proceed on the merits. *See Lovern*, 190 F.3d at 654.

B. *Motion to Stay*

In the alternative to its motion to dismiss/motion for summary judgment, the Barter seeks to have the court to stay the proceedings pending the completion of the Project. For the reasons that follow, I find that granting such a stay is not justified under the circumstances of this case at this time.

Although a motion to stay proceedings is not expressly provided for by the Federal Rules or by statute, the district court has the inherent discretion to recognize such a motion under its general equity powers. *See Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 489 (E.D. Va. 2005) (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)). However, the Fourth Circuit has observed that this power "is not ... without limitation." *Williford*, 715 F.2d at 127. Instead, "proper use of this authority 'calls for the exercise of judgment which must weigh competing interests and maintain an even balance.'" *Williford*, 715 F.2d at 127 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). The party seeking a stay must justify it by "clear and convincing circumstances," and these circumstances must weigh more heavily than any potential harm to the party against whom the stay applies. *Williford*, 715 F.2d at 127. The applicant must "make out a clear case of hardship or inequity in being required to go forward. ..." *Williford*, 715

-16-

F.2d at 127 (quoting *Landis*, 299 U.S. at 254-55). Otherwise, a stay is not merited. *See Aventis*, 403 F. Supp. 2d at 489.

Here, the Project addresses only one of Morrell's claims, namely the accessible path of travel. None of Morrell's various other complaints would be addressed by the completion of the Project. Although the Barter contends that the remaining ADA violations alleged by Morrell simply are incorrect or have now been remedied, as Morrell notes in his Response to the Motion to Dismiss, a dispute in fact exists with regard to whether these violations do, in fact, still exist, whether they soon will be remedied or whether they ever existed in the first place. In particular, Morrell states in his declaration that he employed an expert to inspect the subject Property, and that this expert has informed him that various violations do, in fact, still exist. (Morrell Declaration at 1.) That being the case, I find that granting the Motion to Stay the proceedings pending the completion of the Project, which will take at the very least, eight or nine months, and which will address only one of Morrell's various complaints, could severely prejudice Morrell. Specifically, staying the proceedings pending the completion of the sidewalk also would stay the proceedings with regard to all of his other complaints, which would not be addressed during the completion of the sidewalk, thereby further delaying any injunctive relief that could be granted during the time period of any stay on those claims. I further find that the Barter has failed to show by "clear and convincing" evidence that the stay is even justified, and that any such circumstances would be outweighed by this harm to Morrell. The only such argument contained in the Barter's Motion to Dismiss is that there is "no good reason for the parties to go through the expense of discovery on hypothetical or moot violations of the ADA." The Barter further alleges that the premises are now

accessible to Morrell, and that the new sidewalk should be completed later this year. Finally, the Barter states that under this court's usual scheduling order, the sidewalk will be built at approximately the time this case would reach trial. Thus, the Barter argues that litigation over issues that are now or will shortly become moot is a waste of the court's and the parties' resources. However, given my finding that Morrell's claims are not moot and that various contingencies exist regarding the completion of the Project, which could occur at the earliest in an eight- or nine-month period, I find that the Barter's argument is outweighed by the harm to Morrell as elaborated above. Lastly, I note that although the Barter contends that the property is now accessible to Morrell, Morrell takes issue with that contention. For all of these reasons, I will deny the Barter's Motion to Stay.

## PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations.

1. Morrell alleges various violations of Title III of the ADA against the Barter, including the failure to provide an accessible path of travel from the public sidewalks to the Barter Green Project property;

2. The Barter has received a grant from VDOT for the "construction of a retaining wall, sidewalks, and historic street lighting on Partington Place and Main Street;"

3. The only available remedy under Title III of the ADA is injunctive relief;

4. If a plaintiff in an ADA case already has received everything to which he would be entitled, those claims are moot absent any basis for concluding the plaintiff

-18-

would be subjected again to the same wrongful conduct by the defendant;

5.     Morrell has received nothing to which he is entitled under the ADA, and the Project addresses only one of Morrell's complaints;

6.     Because the plans for the construction of the sidewalk are not sufficiently definite or comprehensive, there is no guarantee that Morrell will not continue to be subjected to the lack of an accessible path of travel from the public sidewalks to the Barter Green Project property;

7.     Granting a motion for summary judgment on mootness grounds is inappropriate at this time;

8.     If jurisdictional facts are intertwined with the merits of a dispute, ordinarily the entire dispute is appropriately resolved by a proceeding on the merits;

9.     With regard to Morrell's remaining alleged ADA violations, the jurisdictional facts are intertwined with the merits of the parties' dispute;

10.    Morrell's remaining alleged ADA violations must be resolved by proceeding on the merits;

11.    The party making a motion to stay must justify it by "clear and convincing circumstances" which must outweigh any potential harm to the party against whom the stay applies;

12.    The Barter has not shown any circumstances by clear and convincing evidence to justify a stay, and the circumstances outlined by the Barter are outweighed by the harm to Morrell that would result from granting a stay of the proceedings pending completion of the Project, which will take at the very least eight or nine months, and which will address only one of Morrell's complaints.

13.    Granting the Motion to Stay the proceedings pending completion of the Project is not justified at this time.

# RECOMMENDED DISPOSITION

Based on the above stated reasons, I recommend that the court deny the Barter's motion for summary judgment, (Docket Item No. 22), as well as its Motion to Stay, (Docket Item No. 11).

## <u>Notice To Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

-20-

**DATED:** This 11th day of May 2007.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE

Case 1:07-cv-00003-GMW-PMS   Document 40   Filed 05/11/07   Page 21 of 21   Pageid#: 319